**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANN L. GILL,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 96-2172

SYSTEM PLANNING CORPORATION,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-1683-A)

Argued: July 9, 1997

Decided: August 25, 1997

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Peter Stephen Saucier, KOLLMAN & SHEEHAN, P.A.,
Baltimore, Maryland, for Appellant. Linda Marie Jackson, CHARL-
SON & BREDEHOFT, P.C., Reston, Virginia, for Appellee. **ON
BRIEF:** Clifford B. Geiger, KOLLMAN & SHEEHAN, P.A., Balti-
more, Maryland, for Appellant. Elaine C. Bredehoft, John M. Brede-
hoft, CHARLSON & BREDEHOFT, P.C., Reston, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

System Planning Corporation (SPC) appeals an order of the district court denying its motion for judgment as a matter of law after a jury awarded compensatory damages to Ann L. Gill on her claims of retaliation in violation of Title VII, see 42 U.S.C.A. § 2000e-3(a) (West 1994). Because we conclude that the jury verdict is not supported by substantial evidence, we reverse.

I.

SPC conducts research and development for the federal government, primarily as a defense contractor. During the spring and summer of 1994, when the events relevant to this litigation transpired, Gill was employed in SPC's Security and Information Systems Department (SISD), where her duties consisted of obtaining security clearances for SPC personnel and processing visitor requests. Additionally, Gill had been trained as a "LAN mentor," a person who could assist others with the operation of a computer network important to SPC's business. Although Gill regularly supervised other employees, her duties were primarily clerical.

Beginning in 1990, SPC found it necessary to reduce its work force significantly in response to decreases in federal defense spending. As part of this process, in early 1994 SPC employed a consultant, Dorsey Clement, to review the structure and operation of SISD. At that time, the department consisted of six people, including Gill; all were aware that the size of the department would be reduced in an effort to promote efficiency and cost-effectiveness. After conducting her review, Clement recommended that SISD be reorganized to consist of three new positions: A facilities security officer (FSO), an information systems security officer, and a document control specialist. All other positions in SISD would be eliminated.

2

Linda Easley, who was responsible for oversight of SISD, announced the availability of the FSO position in early May. Several individuals, including Gill and her immediate supervisor, Phyllis Moon, expressed an interest in the position. Easley interviewed Gill, Moon, and one other person before awarding the post to Moon in mid-June. Gill protested Moon's promotion, insisting that Moon was not qualified to be FSO and that she had been selected only because of her race. Gill expressed these concerns to personnel in SPC's human resources department, to Easley, to Easley's supervisor, and to Moon herself and informed them of her intent to file a charge of racial discrimination. Thereafter, Easley--who had previously been friendly to Gill--began to treat her in a "cold" and "businesslike" manner. J.A. 202.

After Easley transferred SISD employees to the remaining new positions recommended by Clement and two other SISD employees voluntarily resigned, Gill was left as the only member of the department without a position. When Easley met with Gill to inform her of this situation, she offered Gill a security-related position in another department. Gill declined the offer, stating that she did not wish to work there. Gill also refused a secretarial position before reluctantly agreeing to serve as a facilities assistant. Easley offered Gill that post because it entailed implementing plans to relocate a large number of SPC employees, a task with which Gill had previously demonstrated some skill. Her pay, benefits, and grade remained the same.

After the meeting, Gill went home and remained on sick leave for two weeks, so traumatized by the employment change that she became physically ill. Gill's condition worsened when she was informed that security files had been removed from her office in her absence.[1] Gill's physician prescribed medication to alleviate her symptoms.

During the ensuing weeks, several incidents convinced Gill that she was no longer wanted at SPC. For example, upon reporting to her new position, Gill found herself in an office next to Easley and discovered that her duties consisted primarily of maintaining conference room

_____

[1] Gill claims that her office was "cleaned out," but the record indicates that only the security files were removed.

3

supplies, packing boxes, and answering the telephone. And, although Gill had hoped to continue her activities as a LAN mentor, the computer in her new office was not powerful enough to support the LAN network. Shortly thereafter, Moon asked Gill to review some visitor requests while Gill was answering telephone calls at the front desk. Upon learning what Gill was doing, Easley instructed Moon to take the visitor requests away, stating that Gill no longer possessed the requisite security clearance. Moon did so, causing Gill to burst into tears. Gill also was not informed of a staff meeting that was announced while she was away on sick leave.

Almost immediately after her transfer, Gill began to seek employment elsewhere. Because SPC could not charge the expenses of her new position to any defense contract, Gill was concerned that SPC might lay her off in order to reduce its overhead expenses, a fear heightened by the fact that her responsibilities had been significantly reduced. Within a few days, Gill received an offer of employment from another company as an assistant FSO. Although she initially declined the offer because the salary was $4,000 less than her salary with SPC, Gill changed her mind after she observed a draft of a memorandum listing SPC employees that did not include her name--an incident Gill describes in her brief as "a final cumulative blow." Brief for Appellee at 16.

After pursuing her administrative remedies, Gill filed this action in the district court alleging federal causes of action for discriminatory failure to promote and retaliation against SPC, see 42 U.S.C.A. §§ 2000e-2(a), 2000e-3(a) (West 1994), and several state-law claims against SPC and Easley. The district court granted judgment to the defendants on Gill's state-law claims at various stages in the litigation, leaving only the federal issues for the consideration of the jury. The jury concluded that SPC had not discriminated against Gill, but returned a verdict in Gill's favor on her retaliation claims and awarded $80,000 in compensatory damages. After denying SPC's motion for judgment as a matter of law or for a new trial, the district court awarded attorneys' fees of $61,459.14. SPC now appeals.

II.

SPC primarily contends that the district court erred in denying its motion for judgment as a matter of law. We review de novo the denial

of a motion for judgment as a matter of law to "determine whether substantial evidence exists upon which the jury could find for the appellee." Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383 (4th Cir. 1995). Thus, "[t]he question is whether a jury, viewing the evidence in the light most favorable to [Gill], could have properly reached the conclusion reached by this jury." Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir. 1995).

Gill's claims that SPC retaliated against her in violation of Title VII for pursuing a charge of racial discrimination rest on two distinct but factually related theories. First, Gill maintains that SPC retaliated against her by eliminating her position in SISD and transferring her to another position. Second, she argues that SPC constructively discharged her in retaliation for her threats to pursue charges of racial discrimination; the constructive discharge allegedly was accomplished through the elimination of her original position, the transfer, and the poor treatment she received after the transfer. We conclude, however, that the evidence in the record is insufficient to allow a rational jury to find in favor of Gill on either of her retaliation claims.

In order to establish a prima facie case of retaliation, a plaintiff "must show that (1) he engaged in protected activity; (2) his employer took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity and his employer's adverse employment action." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). The burden of production then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995). Finally, the plaintiff must persuade the fact-finder that the asserted reason for the adverse employment action is a mere pretext and that the true reason for the action was retaliation. See id.

Gill's first claim of retaliation--based on the elimination of her position in SISD and her subsequent transfer--must fail because, even assuming that she can establish a prima facie case of retaliation,[2]

_____

[2] The validity of this assumption is by no means clear. For example, it is questionable whether Gill--who was transferred to a different position

5

SPC articulated a legitimate, nonretaliatory reason for its actions which Gill has failed to rebut. As Easley explained during her testimony, Gill's services were no longer necessary in SISD because her responsibilities, which had been primarily clerical and administrative, could be performed by computer. Our review of the record reveals no evidence to refute this explanation for the decision to transfer Gill to another department. Accordingly, substantial evidence does not exist to support a determination that SPC's asserted reason for Gill's transfer was mere pretext for retaliation, and the district court erred in refusing to grant SPC's motion for judgment as a matter of law on this claim.

Gill's constructive discharge claim is similarly unsupported by the evidence in the record. In order to prove that she was constructively discharged, Gill must show that SPC made her working conditions objectively intolerable in a deliberate attempt to force her to resign:

> The doctrine of constructive discharge protects an employee from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his coworkers. The employee is not, however, guaranteed a working environment free of stress. Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.

Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) (citations & internal quotation marks omitted).

The record clearly establishes that Gill was unhappy with her working conditions to the point that she suffered physical symptoms requiring medical treatment. However, Gill's reaction to her working conditions is immaterial. See Bristow v. Daily Press, Inc., 770 F.2d

_____

carrying the same grade, pay, and benefits--suffered an "adverse employment action." See Hopkins, 77 F.3d at 755 (suggesting that an employee whose position was eliminated during a reduction in force but who could have continued his employment in a different position did not suffer an adverse employment action).

6

1251, 1255 (4th Cir. 1985) (explaining that an employee's "unreasonably sensitive" reaction to the work environment does not provide proof of constructive discharge (internal quotation marks omitted)). Rather, the pertinent question is whether there is substantial evidence to support a finding that Gill's working conditions were objectively unreasonable. Gill has not satisfied this standard. First, as discussed above, Gill's transfer--which she characterizes as a demotion--does not alone prove that her working conditions were unreasonable. Gill experienced no loss of pay, grade, or benefits. And, the other incidents of which she complains, while perhaps annoying or unpleasant, are not so intolerable that a reasonable person would feel compelled to quit. Moreover, Easley's efforts to find another position for Gill after her security position was eliminated belie the notion that SPC intended to force Gill to resign. We therefore conclude that substantial evidence does not support the jury verdict for Gill on her claim that SPC retaliated against her by means of a constructive discharge. Thus, the district court erred in refusing to grant SPC's motion for judgment as a matter of law on this count.

III.

Because the evidence produced in support of Gill's claims of retaliation is not sufficient to support the verdict, we determine that the district court erred in denying SPC's motion for judgment as a matter of law. Accordingly, we reverse. Our conclusion on this point renders consideration of SPC's other arguments on appeal unnecessary, but the award of attorneys' fees must also be vacated in light of our holding.

REVERSED

7